UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLTON NANCE,

                  Petitioner,

vs.                                    Case No. 2:06-cv-618-FtM-29DNF

FLORIDA PAROLE COMMISSION,

                  Respondent.
_____

**OPINION AND ORDER**

**I.**

Petitioner Carlton Nance (hereinafter "Petitioner" or "Nance"), who is proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) on November 13, 2006. Petitioner, pursuant to the Court's Order, filed an Amended Petition (Doc. #6, Amended Petition) on March 8, 2007. The Amended Petition challenges Petitioner's imprisonment resulting from the February 19, 2003 revocation of Petitioner's parole by the Florida Parole Commission. Respondent filed a Response (Doc. #10, Response) to the Amended Petition and attaches supporting exhibits (Docs. #10-1-#10-5, Exhs. A-V). After seeking an extension of time from the Court, Petitioner filed a Reply (Doc. #16, Reply) to the Response and attached supporting exhibits (Doc. #16, Pet. Exhs. A1-A3; B1-B7). Pursuant to the Court's Order, Respondent filed a Supplemental Response (Doc. #28, Supp. Response) on March 11, 2010. This matter is ripe for review.

**II.**

In September 1976, Petitioner was convicted of robbery in the Twentieth Judicial Circuit Court, Lee County, Florida, in case numbers 76-112CF-JHS and 76-115CF-JHS, and sentenced to a total of 40 years in prison with credit for time served. Exhs. A-B.

In November 1991, the Parole Commission granted Petitioner parole subject to the conditions of supervision, until December 5, 2019.[1] Exh. G. In January 2000, the Parole Commission issued a parole violation warrant for Petitioner's arrest. On May 24, 2000, notwithstanding the fact that Petitioner had violated the terms and conditions of his parole by possessing drugs, the Parole Commission issued an order restoring Petitioner's parole supervision and included an amended certificate calling for a term of community control. Exh. H.

In August 8, 2002, Petitioner admitted to his parole supervisor that he had used marijuana in violation of his conditions of parole and signed a form attesting as such. Exh. I. A urinalysis test conducted on Petitioner on August 15, 2002, tested positive for opiates. Exh. I. A second test performed on Petitioner on August 20, 2002, also tested positive for opiates. Exhs. I, N. In September 2002, the parole supervisor submitted a

---

[1]To avoid the lengthy, unrelated discussion of Petitioner's previous dates of parole release, the Court skips to the relevant parole term at issue in this case. See Exhs. C-F.

violation report charging Petitioner with two violations of condition 4(B), use of opiates. Exh. I.

On October 2002, the Parole Commission issued a parole violation warrant for Petitioner's arrest. Exh. J. On November 14, 2002, Petitioner received notice of a preliminary probable cause hearing in his parole violation proceedings, but he waived his right to the preliminary hearing. Exhs. K, L. In November 18, 2002, Petitioner received notice of his final parole revocation hearing. Exh. M.

On January 16, 2003, Petitioner was afforded his final parole violation hearing. During the hearing, Petitioner's supervising probation officer, Officer Walker, testified that on August 8, 2002, Petitioner admitted that he had smoked marijuana and signed an admission statement confessing to the use of marijuana. Exh. N. Based on Petitioner's admission, Officer Walker asked Petitioner to submit to a urinalysis test. The urinalysis test returned positive for opiates and negative for marijuana. Exh. N. A second and a third test also returned positive for opiates. Id. Probation Specialist Whele testified that he had supervised Petitioner's drug screening and that Petitioner's urine was sealed and sent directly to ParmChem Labs. Id. At the hearing, despite his signed admission to use of marijuana, Petitioner denied that he admitted using marijuana. Id. Petitioner further stated that the only substance he had taken was methadone for his back pain, which had been prescribed by a neurologist, Doctor Rubino. Id. Petitioner

never brought his parole supervisor or the parole examiner a prescription from the doctor. Id.

At the conclusion of the parole violation hearing, the parole examiner revoked Petitioner's parole, concluding:

> [R]evoked parole due to this parolee's continued drug use while under supervision. Nance's parole was previously reinstated in 2000 after a warrant was issued for his drug use.
>
> After testing positive for opiate use on 8/8/02, he was sent to SWAFS drug counseling program. Nance continued to use drugs and tested positive for opiates two additional times after admission into the counseling program. Most disturbing about this parolee's behavior is the fact that he continues to adamantly deny the use of any illegal drugs, has accused his parole officer of altering his signed admission statement document, and then introduced a receipt from a pharmacy where he received methadone in October 2002.
>
> All evidence points to the fact that this parolee's drug of choice is heroin. The drug screen tests in the Parole Office were being tested for marijuana and cocaine, but they failed to test him for heroin use. His parole officer sent the urine sample to PharmChem Lab after the August 8, 2002 [] test[,] only because she was suspicious about his evasive answers regarding illegal drug usage. He uses the excuse of a back injury and prescription medication as a reason for his positive drug tests, however, he has yet to produce a legitimate prescription.
>
> This parolee either does not have the ability to or simple chooses not to abide by the required supervision conditions, therefore, [he] needs to be incarcerated at this time for protection of society. He should receive drug treatment prior to being considered for any further release to parole supervision.

Exh. N.

**III.**

A Petition filed pursuant to § 2241 that challenges the decision of a parole commission must abide by the applicable

restrictions in 28 U.S.C. § 2254. Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004); Dill v. Holt, 371 F.3d 1301 (11th Cir. 2004); Peoples v. Chatman, 393 F.3d 1352 (11th Cir. 2004). Because Petitioner filed his Petition after April 24, 1996, this case is governed by the amendments to § 2254 set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Penry v. Johnson, 532 U.S. 782, 792 (2001); Henderson v. Campbell, 353 F.3d 880, 889-90 (11th Cir. 2003); Maharaj v. Sec'y for Dep't of Corr., 304 F.3d 1345, 1346 (11th Cir. 2002). The AEDPA establishes a highly deferential standard of review for state court judgments. Parker v. Sec'y for Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). Several aspects of § 2254, as amended by the AEDPA, are relevant to reviewing this Petition.

**A.**

Title 28 U.S.C. § 2244(d) sets forth the following time limitation:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of

> direct review or the expiration of
> the time for seeking such review;
>
> (B) the date on which the impediment
> to filing an application created by
> State action in violation of the
> Constitution or laws of the United
> States is removed, if the applicant
> was prevented from filing by such
> State action;
>
> (C) the date on which the
> constitutional right asserted was
> initially recognized by the Supreme
> Court, if the right has been newly
> recognized by the Supreme Court and
> made retroactively applicable to
> cases on collateral review; or
>
> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been discovered
> through the exercise of due
> diligence.
>
> (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d).

Respondent seeks dismissal of the Amended Petition as time barred due to Petitioner's failure to comply with the one-year period of limitations as set forth in § 2244(d). See generally Response; Supp. Response. Petitioner does not address whether the instant action is untimely, but instead submits that he presents a claim of actual innocence. Amended Petition at 13.

In this case, the one-year limitations period began to run, at the latest, on the day after the Florida Parole Commission entered the Order revoking Petitioner's parole, February 20, 2003. Chambers v. Florida Parole Comm'n, 257 Fed. Appx. 258 (11th Cir. 2007). Therefore, Petitioner had one year from this date to file a federal habeas petition, or until February 20, 2004. Downs v. McNeil, 520 F.3d 1311, 1317-18 (11th Cir. 2008)(applying "anniversary method" to determine expiration of limitations period, citing Ferreira v. Sec'y Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007)). The federal filing deadline is extended, however, if Petitioner availed himself of one of the statutory provisions which extends or tolls the time period. 28 U.S.C. § 2244(d)(2).

Once triggered, the limitations period is tolled pending resolution of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2); See also Thompson v. Sec'y Dep't of Corr., ____ F.3d ____, 2010 WL 298034 (11th Cir. Jan. 27, 2010). An application is "filed" when "it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000). An application is "properly filed" when:

> its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

> . . . If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be pending, but not properly filed.

Artuz, 531 U.S. at 8, 9. See also Gorby v. McNeil, 530 F.3d 1363, 1366 (11th Cir. 2008). Jurisdiction is a condition of filing, so that an application will not be properly filed if the court later determines it lacked jurisdiction to hear the application. Pace v. DiGuglielmo, 544 U.S. 408, 414-15 (2005).

An application is "pending" for as long as it takes to complete the ordinary state collateral review process. "In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains 'pending.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002). Thus, an application is "pending" during the interval between the time a lower state court reaches an adverse decision, and the day the prisoner timely files an appeal, provided the appeal was timely filed under state law. Carey, 536 U.S. at 219-21; Evans v. Chavis, 546 U.S. 189, 192 (2006). A timely post-conviction motion remains pending until the time to file an appeal has expired (30 days in Florida), even if defendant does not seek appellate review. Cramer v. Sec'y Dep't Corr., 461 F.3d 1380, 1383-84 (11th Cir. 2006)(stating "an appeal is part of the state collateral review process, and a claim remains pending until the completion of the process,. . ."); see also Nix, 393 F.3d at 1237. If an appeal is filed, the application remains pending until issuance of the

mandate by the appellate court. <u>Lawrence v. Florida</u>, 549 U.S. 327, 332 (2007); <u>Ousley v. Sec'y Dep't Corr.</u>, 269 Fed. Appx. 884, 886 (11th Cir. 2008).

An untimely petition, on the other hand, is not "properly filed," whether or not the untimeliness is jurisdictional. <u>Artuz</u>, 531 U.S. at 8; <u>Pace</u>, 544 U.S. at 414-15; <u>Allen v. Siebert</u>, 552 U.S. 3, 128 S. Ct. 2, 4-5 (2007). When a postconviction petition is dismissed in whole or in part because it is untimely under state law, "that [is] the end of the matter" for purposes of § 2244(d)(2). <u>Carey v. Saffold</u>, 536 U.S. 214, 226 (2002). Where a petition for state post-conviction relief has been rejected as untimely by the state courts, it is not "properly filed" under § 2244(d)(2), and therefore the statute of limitations is not tolled. <u>Allen</u>, 128 S.Ct. at 4-5.

**A. First State Habeas Petition**

On July 2, 2003, Petitioner filed a petition for writ of habeas corpus challenging the revocation of his parole in the Third Judicial Circuit Court in Taylor County, Florida. Pet. Exh. B4. Thus, 132 days of untolled time elapsed from February 20, 2003 to July 2, 2003. On July 29, 2003, the Third Judicial Circuit Court entered an Order denying Petitioner relief. <u>Id.</u> The federal limitations period was tolled during the pendency of this action.

Petitioner filed a Notice of Appeal to the First District Court of Appeal on August 7, 2003, the date he signed the Notice.[2] Pet. Exh. B5-B6. On November 21, 2003, the appellate court dismissed the appeal. Contrary to the Respondent's contentions that Petitioner's appeal was dismissed as untimely, the appellate court dismissed the appeal for Petitioner's failure to *timely comply* with the court's show cause order by serving a copy of his response on the appellees. See Supp. Response at 6 (emphasis added). On December 4, 2003, Petitioner moved for a re-hearing, but the appellate court denied his motion on December 30, 2003. Id. at 7. Thus, the federal limitations period was tolled during the pendency of this action.

**B. Petition for Writ of Mandamus - Florida Supreme Court**

Another 145 days of untolled time elapsed from December 30, 2003 until April 28, 2004, when Petitioner filed a Petition for Writ of Mandamus with the Florida Supreme Court. Pet. Exh. B-6. On December 13, 2004, the Florida Supreme Court denied Petitioner's petition for mandamus relief on the merits. Id. at B-7. The federal limitations period was tolled during the pendency of this action.

---

[2]According to the docket sheet from the First District Court of Appeal attached to the Supplemental Response, Petitioner's Notice of Appeal was not in fact received for filing by the court until on or about September 26, 2003. Supp. Response at 14.

**C. Second State Habeas Petition**

Another 204 days of untolled time elapsed from December 13, 2004 until July 5, 2005, when Petitioner initiated his second petition for writ of habeas corpus in the Twelfth Judicial Circuit Court in DeSoto County, Florida, challenging the revocation of his parole. Exh. P. Pursuant to the circuit court's order, the Parole Commission filed a response to the petition. Exh. R. On December 6, 2005, the circuit court denied the Petition as untimely:

> The Court finds that Section 95.11(5)(f) of the Florida Statutes bars Petitioner's claims regarding the Commission's February 19, 2003 order revoking his parole supervision. Inasmuch as Petitioner's claims arose on February 19, 2003, and he filed the instant habeas action on July 12, 2005, his claims are time barred because the action was filed beyond the 1-year time limit.

Exh. S. On January 2, 2006, Petitioner appealed the circuit court's decision by filing a petition for writ of certiorari. On April 26, 2006, the court *per curiam* denied Petitioner's petition. Exh. V.

**IV.**

The Court agrees with Respondent that the instant Petition is time-barred. In particular, because Petitioner's July 5, 2005 habeas petition was dismissed as untimely under Florida law, the petition was not properly filed. The time during which the improperly filed petition was pending is not tolled. Artuz, 531 U.S. at 8; Pace, 544 U.S. at 414-15; Siebert, 552 U.S. 3, 128 S. Ct. at 4-5. Thus, 695 days of untolled time elapsed between

December 13, 2004, and Petitioner's federal Petition filed November 8, 2006.[3] Even if Petitioner's July 5, 2005 State habeas petition was not dismissed as untimely, the federal limitations expired before the filing of the July 5 habeas. Therefore, the § 2254 petition will be dismissed as untimely.

The Supreme Court has not yet decided whether the AEDPA's statute of limitations permits equitable tolling, but has assumed that it does where the parties agree it is available. See Lawrence, 549 U.S. at 336. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, 544 U.S. at 418. The Eleventh Circuit has emphasized that "[e]quitable tolling is an extraordinary remedy that must be applied sparingly" for "[a] truly extreme case." Holland v. Florida, 539 F.3d 1334, 1338 (11th Cir. 2008) (per curiam). Petitioner does not articulate any justifiable reason to apply the doctrine of equitable tolling to the Petition. Petitioner, therefore, has not satisfied the equitable tolling requirements.

---

[3] Respondent submits that the date Petitioner filed the Amended Petition, March 12, 2007, is the operative filing date. Supp. Response at 13, 15. The Court disagrees and finds that November 8, 2006, the date on which Petitioner presented his Petition to prison authorities for mailing, is the operative filing date. The claims raised in Petitioner's Amended Petition are the same as those raised in his Petition, except the Amended Petition is filed on the Court's standardized habeas form. Thus, the Court finds the Amended Petition "relates back" to the date of the initial Petition. Fed. R. Civ. P. 15(c)(2).

Rather, Petitioner submits that the violation of his parole "was not willful [or] substantial and [he] present[s] a claim of actual innocence." Amended Petition at 13. "Neither the Supreme Court nor this Court has ever held that the Constitution requires an actual innocence exception to the AEDPA's one-year limitations period. See Johnson v. Florida Dep't of Corr., 513 F.3d 1328, 1333 (11th Cir. 2008) (stating "[t]o date, this Court has avoided this constitutional issue because no time-barred petitioner has made the requisite actual-innocence showing."). Before reaching this question, the petitioner must first make a sufficient showing of actual innocence." Melson v. Allen, 548 F.3d 993, 1002 (11th Cir. 2008).

Petitioner has shown neither actual innocence nor a fundamental miscarriage of justice. In particular, the Parole Commission revoked parole based on factors including Petitioner's signed admission form attesting to the use of marijuana and Petitioner's multiple urinalysis tests that tested positive for the use of opiates.[4] See Exh. N.

ACCORDINGLY, it is hereby

**ORDERED**:

---

[4]Further, the Parole Commission was unpersuaded by Petitioner's contentions that his prescription for methadone caused the positive opiate result. The Court independent online search reveals that prescription methadone does not show up as an opiate on drug screens. Methodone Today, Vol. IX, No. VII, October 2004, http://www.methonetoday.org.

1. The Amended Petition for Writ of Habeas Corpus (Doc. #6) is **DISMISSED as time-barred.**

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND**

**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __16th__ day of March, 2010.

/s/ John E. Steele
JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record